UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PICHARDO SOSA,<br><br>                              Petitioner,<br><br>                    v.<br><br>WARDEN  OF  ORANGE  COUNTY<br>CORRECTIONS,<br><br>                              Respondent. | |

26 Civ. 2304 (DEH)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

Luis G. Pichardo Sosa ("Petitioner" or "Mr. Pichardo Sosa"), a lawful permanent resident, challenges his detention as unreasonably prolonged, and seeks his immediate release from detention or, in the alternative, a bond hearing.  Pet. at 8-9, ECF No. 1.  For the reasons stated herein, the Petition is **GRANTED**.

## BACKGROUND

Mr. Pichardo Sosa is a native and citizen of the Dominican Republic who has lived in the United States since 2007.  Decl. Luis Pichardo Sosa ("Pichardo Sosa Decl.") ¶ 3, ECF No. 32.  He has held lawful permanent resident ("LPR") status since 2008.  *See* Resp't's Opp'n at 1, ECF No. 11.  In 2018, Mr. Pichardo Sosa pled guilty to two separate offenses of Theft by Deception – False Impression (in violation of 18 Pa. Cons. Stat. § 3922(a)(1)), and to Intentional Possession of a Controlled Substance by a Person Not Registered (to wit: Marijuana) (in violation of 35 Pa. Cons. Stat. § 780-113(a)(16)).  *See id.* at 3.  He was sentenced to between 1 and 23 months of imprisonment on the theft by deception offenses, and between 1 and 13 months on the controlled substances offense, all to be served concurrently.  *See id.*  He served a brief sentence in jail, *see* Pichardo Sosa Decl. ¶ 5, which his counsel represented at a hearing before this Court was approximately three months, *see* June 8, 2026 Hearing Tr. ("Tr.") at 5:2-3.  There is no indication

that he missed any appearances in connection with those proceedings, and he has had no criminal record of any kind since.

In 2021, Mr. Pichardo Sosa married Alexis Marin, a U.S. citizen. Pichardo Sosa Decl. ¶¶ 5, 7. The couple lives in Allentown, Pennsylvania with their two children, ages three and six, who are both United States citizens. Decl. Alexis Marin ("Marin Decl.") ¶¶ 4-5, ECF No. 33. The couple's son has severe autism, requiring Mrs. Marin to be a stay-at-home mother. Pet'r's Sur-Reply Mem. L. Supp. Pet. ("Pet'r's Sur-Reply") at 2, ECF No. 30; Pichardo Sosa Decl. ¶ 10. Mr. Pichardo Sosa is thus the sole financial provider for his family. Pet. Sur-Reply at 1; Marin Decl. ¶ 7.

In late 2024, Mr. Pichardo Sosa's timely-filed application to renew his LPR status—in which he disclosed his past criminal history and submitted biometric information—was approved. Pichardo Sosa Decl. ¶ 12. The parties agree that there is no indication that he has ever missed any immigration-related proceedings. Tr. at 8:7-12, 21:14-18.

In late January 2026, Mr. Pichardo Sosa traveled briefly (thirteen days) outside the country to visit his ailing grandmother in the Dominican Republic. Pichardo Sosa Decl. ¶¶ 13-14. Upon his return on February 4, 2026, *see id.*, he was classified as an "arriving alien" who is inadmissible under the Immigration and Nationality Act (INA) because he had committed a crime involving moral turpitude, INA § 212(a)(2)(A)(i)(I); 8 U.S.C. § 1182(a)(2)(A)(i)(I), and a crime related to a controlled substance, INA § 212(a)(2(A)(i)(II); 8 U.S.C. § 1182(a)(2)(A)(i)(II). *See* Resp't's Opp'n at 2-4. He was then detained pursuant to 8 U.S.C. § 1225(b)(2)(A) ("§ 1225(b)"), *id.* at 1, as a noncitizen "seeking admission" to the United States who "is not clearly and beyond a doubt entitled to be admitted." The Government contends that his detention is also mandatory under 8 U.S.C. § 1226(c)(1)(A) ("§ 1226(c)"), *id.* at 2, which provides for detention for noncitizens who have engaged in certain criminal conduct.

Upon his detention, Mr. Pichardo Sosa, who suffers from asthma, suffered a severe attack necessitating an ambulance.  Pichardo Sosa Decl. ¶¶ 17-18; Tr. at 10:10-15.  He is currently held at the Goshen Correctional Facility in Orange County, New York, where his health needs have often been left unmet, as he was denied access to inhaler for almost four months, despite suffering from four asthma attacks while in detention.  Pichardo Sosa Decl. ¶ 19; Tr. at 10:15-11:1.

Given the distance between where Mr. Pichardo Sosa's family lives in Pennsylvania and where he is detained in New York, his family has been able to visit him only twice, making his current period of detention the longest he has ever been away from his children.  *See* Pet'r's Sur-Reply at 2.  His detention has been "traumatic" for his children, particularly for his six-year-old son, who has a severe disability, and has engaged in self-harm since Mr. Pichardo Sosa was detained.  Marin Decl. ¶¶ 15-16; Tr. at 10:1-7.  Because of his detention, Mr. Pichardo Sosa's family has depleted their savings and 401(k) account to pay for legal fees, rent, and living expenses.  *See* Pet. Sur-Reply at 2.  Ms. Marin is now seeking a loan to cover ongoing expenses. *See id.*  His family is now facing the possibility of homelessness.  Tr. at 9:25.

The Petition was filed on March 20, 2026.  On March 24, 2026, this Court issued an Order to Show Cause and a Stay of Removal, directing the Government to file a letter addressing, among other things, whether there is any basis to distinguish this case from the Court's decision in *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025).  *See* Order, ECF No. 5.  On March 27, 2026, the Government filed its opposition to the Petition for Habeas Corpus, *see* Resp't's Opp'n, and Petitioner replied on March 31, 2026, *see* Pet'r's Reply, ECF No. 13.  On April 6, 2026, Mr. Pichardo Sosa moved the Court to request pro bono counsel on his behalf, ECF No. 15, which the Court granted, ECF No. 16.  On May 6, 2026, Mr. Pichardo Sosa's current counsel entered an appearance on the docket.  ECF Nos. 20-24.  The Court ordered additional briefing from Petitioner's counsel by May 29, 2026, and any additional opposition from Respondent by June 3,

2026.  ECF Nos. 25, 29.  Mr. Pichardo Sosa filed a sur-reply on May 29 as directed.  *See* Pet'r's Sur-Reply.  The Government did not file a sur-reply.

Meanwhile, on May 12, 2026, Mr. Pichardo Sosa was ordered removed from the country by an immigration judge.  Pet'r's Sur-Reply at 2.  He promptly filed a notice of appeal with the Board of Immigration Appeals (BIA).  *Id.*  As of June 8, 2026, no briefing scheduled had yet issued.

Oral argument on this Petition was held on June 8, 2026.  As of the date of the hearing, Mr. Pichardo Sosa had been detained for more than four months.  At the conclusion of hearing, the Court ordered that the petition be **GRANTED** and that Mr. Pichardo Sosa be released immediately, with this Opinion to follow.

## DISCUSSION[1]

For the purposes of this Petition, Mr. Pichardo Sosa does not contest that his detention is provided for by statute.  But he argues that, as a constitutional matter, his detention has been unreasonably prolonged such that it amounts to a denial of due process under the Second Circuit's decision in *Black v. Decker*, 103 F.4th 133, 150-51 (2d Cir. 2024) (requiring that a noncitizen's due process challenge to allegedly prolonged detention be considered under the three-factor analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

Broadly speaking, the Government's counter-arguments fall into two buckets: (1) that, as a noncitizen detained while entering the United States, Mr. Pichardo Sosa's due process rights are diminished as compared to a noncitizen continuously present in the United States, and are adequately accounted for through his removal proceedings; and (2) even assuming that *Black v.*

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

*Decker* provides the applicable framework, Mr. Pichardo Sosa's detention is not unreasonably prolonged under *Black* or otherwise constitutionally suspect under *Mathews*. The Court addresses these points in turn.

**I.      The Degree of Due Process Protection Afforded Mr. Pichardo Sosa**

The Government contends that, because Mr. Pichardo Sosa was detained while re-entering the country, his constitutional due process rights are diminished as compared to an LPR who has been continuously present in the United States, *see* Resp't's Opp'n at 11-12, and that any due process concerns are adequately addressed via his removal proceedings, *see id.* at 12-13.

The Supreme Court has squarely rejected the Government's first argument under facts similar to those here. While the Supreme Court "has long held that a[ non-citizen] seeking initial admission to the United States . . . has no constitutional rights regarding his application," an LPR "returning from a brief trip has a right to due process just as would a continuously present" LPR. *Landon v. Plasencia*, 459 U.S. 21, 31-32 (1982); *see also Joseph v. Arteta*, No. 26 Civ. 2979, 2026 WL 1193489, at *5 (S.D.N.Y. Apr. 30, 2026) ("[A]n LPR who was absent from the United States only briefly and expressed no intention of abandoning his residency in the United States . . . is entitled to the full due-process protections of the Fifth Amendment," on the same footing as "an LPR who has been continuously present in the United States"). Here, Mr. Pichardo Sosa left the country to visit his ailing grandmother for only thirteen days; such a brief trip abroad does not diminish the due process rights he would otherwise be afforded as a continuously-present lawful permanent resident.

The Government points to *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), but that case is inapposite. There, the Supreme Court held that an LPR who had traveled to Eastern Europe for approximately nineteen months during the Cold War should be treated for constitutional purposes as "an alien on the threshold of initial entry," *id.* at 212, because he "simply

left the United States and remained behind the Iron Curtain for 19 months," *id*. at 214. "In such circumstances," the Court had "no difficulty in holding respondent an entrant alien or assimilated to that status for constitutional purposes." *Id.* But during the same term, the Supreme Court held in *Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953) that an LPR "who left the country on a four-month voyage retained his full constitutional rights when he sought reentry." *Joseph*, 2026 WL 1193489, at *4 (summarizing the holding of *Chew*). Given the short duration of his trip, the Court explained that, "[f]or purposes of his constitutional right to due process," Chew would be subject to the same status as "that of an alien continuously residing and physically present in the United States." *Chew*, 344 U.S. at 596; *see also Plasencia*, 459 U.S. at 31-34 ("[A] permanent resident alien[ whose] absence is extended . . . may lose his entitlement to" have his status treated like "that of an alien continuously residing and physically present in the United States," while one who "was absent from the country only a few days" is entitled to full due process protections.). This case, which involved a two-week trip abroad to visit family, is obviously more akin to *Chew* than to *Mezei*, as "courts in this district have read *Mezei* to stand for the limited proposition that an LPR loses full due-process rights only when there exists evidence of willful abandonment of residency." *Joseph*, 2026 WL 1193489, at *5 (cleaned up).

The Court also rejects the Government's second argument. It is correct that Mr. Pichardo Sosa is entitled to the procedural protections afforded to him through his removal proceedings, but those processes protect only his right to *remain* in the country. They do not protect his interest in his *liberty* during the pendency of his removal proceedings, which is a different matter altogether, and which is the subject of his habeas petition.

Accordingly, the Court concludes that, notwithstanding that he was detained while re-entering the country, Mr. Pichardo Sosa is entitled to the full degree of due process protections as an LPR who has been continuously present in the United States.

6

## II.    Application of *Black v. Decker*

The Court now turns to its analysis of Mr. Pichardo Sosa's due process claim for prolonged

detention under *Black v. Decker*. There, the Second Circuit explained that, while due process does

not require an initial bond hearing for noncitizens subject to a statute providing for mandatory

detention, such detention might, under some circumstances, become unreasonably prolonged so as

to necessitate "additional procedural protections." *Black*, 103 F.4th at 145. The Circuit further

held that due process challenges for prolonged detention should be reviewed under the analysis set

forth by the Supreme Court in *Mathews v. Eldridge*, which takes into consideration: (i) the private

liberty interest affected, (ii) the risk of erroneous deprivation of that interest and the probable value

of additional procedural safeguards, and (iii) the government's interest, including the function

involved and the burdens that additional procedural requirements would create. *See id.* at 147.

The Government first argues that Mr. Pichardo Sosa's detention has not been

"unreasonably prolonged," noting that most cases granting relief for prolonged detention involved

timeframes that "exceeded the period at issue here." Resp't's Opp'n at 14-15. While the

Government is correct that a period of detention exceeding six months is generally considered to

be "unreasonably prolonged," there is no bright line rule about when a detention meets that

threshold. *Black*, 103 F.4th at 150-51. Instead, the Second Circuit instructs that "courts hearing

due process challenges to prolonged . . . detention should apply the *Mathews* framework to

determine, case by case" what process is due. *Id.* Indeed, the Government conceded this point at

the hearing. Tr. at 22:12-19, 27:4-14.[2] Thus, "[c]ourts in this district routinely grant bond hearings

---

[2] In its brief, the Government cites various cases denying relief for claims of prolonged
detention involving periods longer than Mr. Pichardo Sosa's current period of detention. *See*
Resp't's Opp'n at 13-14 (citing cases). But all of these cases pre-date the Second Circuit's decision
in *Black* and its instruction that claims of prolonged detention be subject to a case-by-case inquiry,
which the Court undertakes here.

to noncitizens before the six-month mark when that noncitizen's private interests are especially strong." *Joseph*, 2026 WL 1193489, at \*6 (citing, *inter alia*, *Veletanga v. Noem*, No. 25 Civ. 9211, 2025 WL 3751865, at \*4 (S.D.N.Y. Dec. 26, 2025) (applying *Mathews* test to grant relief where the petitioner had been detained for three months); *Ventura v. Bondi*, No. 26 Civ. 568, 2026 WL 539879, at \*1, \*5 (S.D.N.Y. Feb. 26, 2026) (finding detention prolonged in violation of due process and ordering release where the petitioner had been detained for four months)).

The Court therefore turns to the *Mathews* analysis, focusing on the private interests asserted by Mr. Pichardo Sosa and whether they are "particularly strong." *Joseph*, 2026 WL 1193489, at \*6.

### A. Petitioner's Asserted Interests.

As to the first factor, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Black*, 103 F.4th at 151. While the Government argues that the interest asserted by Mr. Pichardo Sosa "is not liberty in the abstract, but liberty *in the United States* by someone [not admitted to] this country," Resp't's Opp'n at 17 (quoting *Palma v. Arteta*, --- F. Supp. 3d ---, No. 25 Civ. 9340, 2026 WL 697015, at \*12 (S.D.N.Y. Mar. 12, 2026)), the Court cannot agree with that framing. As an initial matter, Mr. Pichardo Sosa is currently held at the Goshen Orange County jail, which houses civil immigration detainees alongside pre-trial criminal arrestees and incarcerated prisoners. *See J.M.P. v. Arteta* ("*J.M.P. II*"), 807 F. Supp. 3d 265, 290 (S.D.N.Y. 2025). His conditions of detention are not "meaningfully different from criminal punishment." *Black*, 103 F.4th 133, 146-47. But even adopting the Government's framing of his interest as "liberty in the United States," Mr. Pichardo Sosa has lived here for almost two decades—for approximately nineteen years overall, and for approximately eighteen years as an LPR—which means that his "interest in liberty *in the United States* must be particularly strong." *Perez Flores v. Bondi*, No. 25 Civ. 306, 2025 WL 1921748,

8

at *6 (W.D.N.Y. July 14, 2025) (emphasis in original) (finding strong interest in liberty in the United States for noncitizen who has "lived in this country for more than two decades"); *see also Veletanga*, 2025 WL 3751865, at *6 (same, for petitioner residing in the United States for 22 years). By contrast, the case on which the Government relies, *Palma*, involved a noncitizen who "was not an LPR and had never been lawfully admitted" to the country. Resp't's Opp'n at 17 n.7. Mr. Pichardo Sosa is obviously situated differently.

And, as even the Government acknowledges, Mr. Pichardo Sosa's other asserted interests are unusually "weighty, particularly in light of the equities Petitioner describes in the petition." *Id.* at 17. He suffers from severe asthma and has largely not been provided with preventative care, having been denied an inhaler for almost four months. *See* Pichardo Sosa Decl. ¶¶ 17-19; Tr. at 10:15-24; *cf. Ozturk v. Trump*, 783 F. Supp. 3d 801, 812 (D. Vt. 2025) (considering petitioner's health as among extraordinary circumstances warranting relief). He is the sole financial provider for his family and his family is now "struggling to survive without his support," Pet. at 8, as they have depleted their savings and 401(k) funds to pay for legal fees, rent, and basic living expenses, *see* Marin Decl. ¶ 17. Mr. Pichardo Sosa's detention has been "traumatic" for his children; in particular, his six-year-old son, who has a severe disability, and who has struggled without him and has recently engaged in acts of self-harm. Marin Decl. ¶¶ 15-16; Tr. at 10:1-7. These effects on Mr. Pichardo Sosa's family elevate his interest in avoiding prolonged detention to a particularly significant level. *See Joseph*, 2026 WL 1193489, at *6 (finding petitioner's interests particularly significant where "[h]is detention also affects his daughter"); *J.M.P. v. Arteta* ("*J.M.P. I*"), 804 F. Supp. 3d 387, 393 (S.D.N.Y. 2025) (considering petitioner's inability "to contribute to his family's financial support" during his detention). And because his family lives in Pennsylvania while Mr. Pichardo Sosa is detained in New York, they have only managed to visit twice, Marin Decl. ¶ 20, imposing particular burdens on their fundamental interest in family integrity. *Cf. Duchesne v.*

*Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) ("This right to the preservation of family integrity encompasses the reciprocal rights of both parent and children.").

Together, all of these facts—including Mr. Pichardo Sosa's longtime residence in the country; his status as an LPR; his serious health issues, which have been unmet in detention; the extreme financial hardship and emotional strain on his family, including his autistic child; and the significant physical distance separating him from his family—lead the Court to conclude that, under the first prong of the *Mathews* analysis, his asserted interests are "particularly strong." *Joseph*, 2026 WL 1193489, at *6.

And there is no end in sight to these deprivations, as the Government can provide no clear timetable for resolution of his removal proceedings. Tr. at 31:8-12. Mr. Pichardo Sosa filed his appeal with the BIA in mid-May, or less than a month ago. At least as of June 8, he had yet to receive a briefing schedule. Tr. at 6:22-7:1. Evidence submitted by Mr. Pichardo Sosa indicates that the average length of time for BIA proceedings is more than 300 days, and that the median length of time is almost 150. Victor L. Hou Decl. ("Hou Decl.") Ex. A ¶ 3, ECF No. 31. Thus, while Mr. Pichardo Sosa has been detained for slightly less than the six-month period that courts have typically held to be unreasonably prolonged, "[i]t would be particularly inappropriate to impose a six-month arbitrary threshold in this case before the petitioner could raise any due-process challenge to his detention in the first instance" because there is little doubt that he will "continue to be detained for a considerable period of time." *Joseph*, 2026 WL 1193489, at *6; *see also Hylton v. Decker*, 502 F. Supp. 3d 848, 855 (S.D.N.Y. 2020) ("[T]he fact that [Petitioner] could be facing several months of further detention before the conclusion of his removal proceedings strongly favors a bond hearing.").

Accordingly, the first *Mathews* factor weighs clearly in favor of Mr. Pichardo Sosa.

### B.  The Risk of Erroneous Deprivation.

As to the second factor—the risk of erroneous deprivation of liberty—the statutory procedures available to Mr. Pichardo Sosa are virtually nonexistent.  Under the relevant statutes, he is subject to mandatory detention with no statutory right to an individualized bond hearing to test the need for detention.  *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").  "Instead, the only procedural protection typically afforded to someone like Petitioner is DHS's discretion to grant parole to a detainee who has demonstrated a credible fear of persecution."  *Peguero v. Arteta et al.*, No. 26 Civ. 1715, 2026 WL 821428, at *4 (S.D.N.Y. Mar. 25, 2026) (quoting *Rashid v. Trump*, 807 F. Supp. 3d 349, 369 (D. Vt. 2025)).  And for those who have engaged in certain criminal conduct under § 1226(c), mandatory detention "sweeps in people convicted of many nonviolent offenses and does not take into account when the prior crime was committed, suggesting that the prior conviction may well be a poor proxy for a finding of dangerousness."  *J.M.P. I*, 804 F. Supp. at 393 (quoting *Black*, 103 F.4th at 152).

Here, Mr. Pichardo Sosa fully served his sentences for his misdemeanor convictions, and there is no assertion that he has engaged in any kind of unlawful conduct in the approximately eight years since those convictions.  *See Black*, 103 F.4th at 153 (finding high risk of erroneous deprivation where petitioners had lived law-abiding lives in the years since their criminal convictions); *J.M.P. I*, 804 F. Supp. 3d at 394 (finding high risk of erroneous deprivation where petitioner had lived law-abiding life during preceding five years).  Accordingly, the second *Mathews* factor also weighs heavily in favor of Mr. Pichardo Sosa.

### C.  The Government's Interest.

Finally, the third factor also weighs in favor of Mr. Pichardo Sosa.  While the Government's brief references its interests in ensuring a noncitizen's continued appearance at

proceedings and the protection of the public, *see* Resp't's Opp'n at 18, at the hearing, the Government expressly disclaimed that it was relying on those interests to justify Mr. Pichardo Sosa's continued detention. Tr. at 28:17-29:1. The Government instead asserted only one interest: that Mr. Pichardo Sosa's detention "furthers 'the Government's interest in preventing the entry of unwanted persons,' which 'is at its zenith at the international border.'" *Palma*, 2026 WL 697015, at *13 (quoting *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004)); *see* Tr. at 28:17-29:5.

But this "confuses issues," as Mr. Pichardo Sosa's requested relief "does not affect the Government's determination of whether [Mr. Pichardo Sosa] is admissible"; it simply protects his due process right to be free from prolonged detention pending adjudication of those proceedings. *Joseph*, 2026 WL 1193489, at *7. Indeed, at the hearing, the Government did not deny that its asserted interest would be adequately addressed via removal proceedings, and could not articulate how Mr. Pichardo Sosa's continued detention served to facilitate that interest. *See* Tr. at 29:6-31:6. In any event, the Government was aware of the convictions underlying its determination that Mr. Pichardo Sosa is inadmissible when it renewed his LPR status in 2024; it clearly did not believe that it had an interest in excluding him from the country at that time, and nothing about his circumstances has changed since then.

In sum, there is nothing here to suggest that Mr. Pichard Sosa's continued detention facilitates the Government's asserted interest; and even if there were some small evidence in that regard, the first and second *Mathews* factors weigh so heavily in Mr. Pichardo Sosa's favor that the balance of the relevant factors weighs clearly in favor of relief.

## III. Remedy

In terms of relief, Mr. Pichardo Sosa requests immediate release from custody or, in the alternative, a bond hearing. "Ordinarily, the remedy for unreasonably prolonged detention is a constitutionally adequate bond hearing before an IJ." *W.A.C. v. Rokosky*, No. 26 Civ. 3419, 2026

WL 1383150, at \*6 (D.N.J. May 18, 2026).  At such a hearing, the Government typically bears the burden of proving by clear and convincing evidence that continued detention is justified.  *See Black*, 103 F.4th at 157-58.  The relevant factors to be considered are whether the petitioner poses a danger to the community or a flight risk.  *See id.* at 153-54.  This Court has previously ordered such a bond hearing when granting a petition by an immigration detainee claiming that their detention has been unreasonably prolonged.  *See, e.g.*, *J.M.P. I*, 804 F. Supp. 3d at 395; *C.A.R.R. v. Genalo*, No. 26 Civ. 428, ECF No. 11 (S.D.N.Y. May 26, 2026).

"But a bond hearing is not the only remedy available. Where the existing record indicates that the Government could not possibly meet its heightened burden to justify continued detention, release is appropriate." *W.A.C.*, 2026 WL 1383150, at \*6; *cf. Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention.  The typical remedy for such detention is, of course, release.").  "This is such a case," for several reasons.  *W.A.C.*, 2026 WL 1383150, at \*6.  As an initial matter, while the Government opposes the Petition, it devotes the entirety of its opposition brief to arguing that the Petition should be denied, *see generally* Resp't's Opp.—but it does not dispute that, if petition is granted, immediate release is an appropriate form of relief in this case.  It has therefore waived any argument to the contrary.  *Cf. Sajous v. Decker*, No. 18 Civ. 2447, 2018 WL 2357266, at \*12 (S.D.N.Y. May 23, 2018) (finding that, where Petitioner briefed issue of burden of proof at bond hearing and "the Government ma[de] no argument" in response, "the Government has 'waived this argument by failing to raise it in opposition to plaintiffs' motion'") (citing *NML Capital, Ltd. v. Republic of Argentina*, No. 05 Civ. 2434, 2009 WL 1528535, at \*1 (S.D.N.Y. May 29, 2009); *Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001); *Kao v. British Airways, PLC*, No. 17 Civ. 0232, 2018 WL 501609, at \*5 (S.D.N.Y. Jan. 19, 2018)).

More substantively, the Government has twice acknowledged that continued detention of Mr. Pichardo Sosa would not serve the interests that the Government would be required to establish at a bond hearing.  At the hearing before this Court, the Government expressly disclaimed danger to the community or flight risk as reasons to continue Mr. Pichardo Sosa's detention.  *See* Tr. at 28:19-22 (counsel for the Government stating that "[t]he government is not asserting that petitioner is a flight risk or necessarily a danger to the community with respect to [the third *Mathews* factor].");  *cf. W.A.C.*, 2026 WL 1383150, at *6 (granting immediate release rather than a bond hearing where the Government never asserted that the Petitioner was a flight risk, and has "never asserted that Petitioner presents a danger to the community . . .  In fact, they concede he is not.").  Indeed, it would be difficult for the Government to argue otherwise, having renewed Mr. Pichardo Sosa's LPR status just two years ago, which necessarily entailed a determination that he was not dangerous or a flight risk.  The Government was "well aware of [his] conviction[s for larceny- and marijuana-related offenses] when making the decision" to renew his LPR status, and "cannot point to any changed circumstances" since then that could support a different conclusion now.  *W.A.C.*, 2026 WL 1383150, at *6.  Thus, having twice conceded that Mr. Pichardo Sosa is not a danger to the community or a flight risk, the Government could not possibly carry its burden at a bond hearing to show that continued detention is warranted.

Even without these concessions, a fresh review of the record supports the same ultimate conclusion.  As to dangerousness, Mr. Pichardo Sosa's non-violent offenses were committed almost a decade ago; he fully served his time of incarceration, which was less than the duration of his current detention; and there is no assertion that he has engaged in any criminal or otherwise harmful conduct since.  *Cf. id.* (noting that "[t]he only negative factor Respondents could conceivably point to is Petitioner's 2014 counterfeit-currency conviction," but "have not identified any intervening criminal conduct" since that "more than a decade old" offense); *United States v.*

14

*Hartery*, 351 F. Supp. 2d 14, 15 (N.D.N.Y. 2005) (bail applicant "unlikely" to be a danger to others where "prior convictions . . . were committed over ten years ago."). And there is no evidence in the record of risk of flight or non-appearance at removal proceedings. There is no assertion that Mr. Pichardo Sosa has ever failed to appear to any proceedings (criminal or immigration-related) during his approximately two decades in the United States. Tr. at 21:14-18. *Cf. W.A.C.*, 2026 WL 1383150, at *6 (noting petitioner has "complied with his reporting requirements"). Moreover, Mr. Pichardo Sosa has strong family ties and is the primary financial support for his wife and two young children, all of whom are United States citizens. He has been gainfully employed and, if released, can return to work. *See* Tr. at 9:16-22, 13:6-11. Courts in this District have held that longtime residents who, like Mr. Pichardo Sosa, have strong family ties and/or have committed only minor non-violent offenses are not a danger to the community or a risk of flight. *See Guerrero v. Decker*, No. 19 Civ. 11644, 2020 WL 1244124, at *5 (S.D.N.Y. Mar. 16, 2020) (noting that the record could support finding that "the Government did not meet its burden to establish by clear and convincing evidence that [petitioner] — a man who has resided in Suffolk County for 15 years and whose criminal history is limited to non-violent misdemeanor convictions — posed a danger to the community or a risk of flight"); *D'Alessandro v. Mukasey*, No. 08 Civ. 914, 2009 WL 799957, at *3 (W.D.N.Y. Mar. 25, 2009) (finding that there is "no evidence in the record whatsoever to support a finding that [petitioner] is a flight risk or is a danger to the community" where petitioner has "strong family ties" in the form of a wife and son who legally reside in the U.S.), *aff'd*, 2009 WL 931164 (W.D.N.Y. Apr. 2, 2009); *cf. Hartery*, 351 F. Supp. 2d at 16 (holding that criminal defendant was "highly unlikely" to flee where he "has a fiancé and an eight year old daughter").

In sum, immediate release rather a bond determination is the appropriate remedy because: (1) the Government has not opposed release as an appropriate remedy; (2) the Government has

15

twice conceded that the factors (dangerousness and flight risk) it would be required to establish at a bond hearing do not apply to Mr. Pichardo Sosa; and (3) the Court's own review of the record indicates that the Government could not establish by clear and convincing evidence at a bond hearing that continued detention is appropriate.  Accordingly, under the somewhat unusual facts of this case, the Court orders that Mr. Pichardo Sosa be released from custody immediately.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus is **GRANTED.** Counsel for petitioner may file an application for attorney's fees and costs pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412 within the time provided by the Local Rules.  The Clerk of Court is respectfully directed to enter judgment in Petitioner's favor pursuant to F.R.C.P. 58.


SO ORDERED.

Dated: June 23, 2026

New York, New York


_____
DALE E. HO
United States District Judge

16